UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| KENNETH HARLAN, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA <br><br> Defendant. | 4:15-CV-04046-KES <br><br><br> MEMORANDUM OPINION <br> AND ORDER |

On February 5, 2015, plaintiff, Kenneth Harlan, having properly exhausted his administrative remedies, filed his complaint against defendant, the United States, seeking to recover under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1364. Harlan alleges that he received negligent dental treatment from federal employees who were acting within the scope of their employment. Docket 1. Harlan further alleges that the dental care he received between April and June 2014 was deliberately indifferent to his medical needs. *Id.* On August 14, 2015, Harlan moved to amend his complaint. Docket 17. This court granted Harlan's motion to amend the complaint on September 11, 2015, because no objection was filed and good cause was shown. Docket 18.

Three motions are pending before the court. Harlan moves for summary judgment on all claims within his amended complaint. Docket 23. The United States moves to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, and cross-moves for summary judgment. Docket 28. In response, Harlan requests leave to

amend both his amended complaint and his motion for summary judgment.
Docket 35. The United States opposes Harlan's motion to amend his amended
complaint and his motion for summary judgment. Docket 37.

For the following reasons, the court denies Harlan's motion to amend his
amended complaint and his motion for summary judgment and grants the
United States's motion to dismiss. The United States's cross-motion for
summary judgment and Harlan's motion for summary judgment are denied as
moot.

## BACKGROUND

Harlan is currently an inmate in the Bureau of Prison's (BOP) Yankton
Federal Prison Camp (FPC Yankton) located in Yankton, South Dakota, and
has been an inmate at FPC Yankton for all times relevant to this matter.

### I.    Dental Care at FPC Yankton and BOP Dental Care Procedures.

Beginning in October 2013, FPC Yankton learned that the facility's full-
time dentist was selected for a transfer to another BOP facility.[1] As a result of
the impending transfer of its full-time dentist, FPC Yankton's human resources
department immediately began to seek a replacement dentist. The process of
hiring a full-time replacement dentist to work at FPC Yankton lasted from
October 2013 to August 2014, when a full-time contract dentist was hired.[2]

---

[1] FPC Yankton's full-time dentist's last day at the prison was scheduled to be
January 15, 2014. Docket 32 at 4, ¶ 11.

[2] FPC Yankton's human resources department began the hiring process of a
contract dentist in February 2014. In May 2014, the Warden of FPC Yankton
determined that, due to the candidate's background, the candidate was not
appropriate to work in the correctional environment. Docket 32 at 4, ¶ 12.

During the period when FPC Yankton lacked a full-time dentist, the prison provided inmates with dental care through a combination of visits from other BOP dentists, as Temporary Duty (TDY) dentists,[3] or having another BOP dentist provide remote oversight as a supervisor to the on-site dental hygienist. When providing remote oversight, a supervisory dentist relies on the on-site hygienist to serve as "the eyes and ears of the supervising dentist." Docket 31 at 3, ¶ 7. The job requirements of the on-site hygienist, when working under a remote supervisory dentist, include listening to an inmate's complaints, taking x-rays when necessary, and entering a note into the BOP's electronic medical records system so that the supervisory dentist "can assess the complaint, triage the inmate, and establish a treatment plan." *Id.*

BOP dentist Dr. Donald Ross, Regional Chief Dentist, provided remote dental oversight to FPC Yankton and FPC Yankton's on-site registered dental hygienist (RDH) Sheryl Fix, at all times relevant to this dispute. During the months of May 2014 through August 2014 FPC Yankton attempted to solicit other BOP dentists to visit FPC Yankton as TDY dentists. Unfortunately, due to late cancellations by other BOP dentists, the only dentist actually on-site at FPC Yankton was Dr. Ross, who visited from May 5-10, 2014, and August 18-23, 2014.

BOP policy directs that dental treatment qualifies as either "emergent" or "non-emergent." *Id.* at 2, ¶ 5. Emergent dental care "includes treatment for relief of severe dental pain, traumatic injuries, acute infections, sedative

---

[3] TDY dentists visit BOP institutions that are without a full-time dentist to provide periodic on-site dental services. Docket 31 at 3, ¶7-8.

fillings, extraction of non-restorable teeth, and gross debridement of symptomatic areas." *Id.* When dental treatment qualifies as emergent, the goal is "to stabilize the patient's immediate, urgent dental need pending a more permanent treatment plan." *Id.* Conversely, "non-emergent" dental care is considered elective treatment. *Id.* Because of the differences in dental treatment that result from a designation as "emergent" and "non-emergent," objective triage procedures are used to evaluate whether a purported dental emergency requires immediate treatment or can be scheduled for a later time. *Id.*

Dr. Ross further utilizes a personal system to triage and prioritize the dental needs of inmates when providing remote dental oversight to BOP facilities. *Id.* at 4, ¶ 9. This system is designed to ensure that dental patients with the most pressing treatment needs are examined by either Dr. Ross or another TDY dentist before inmates who only have routine dental issues. *Id.* Assessments classified as "Priority 1" under Dr. Ross's system are not necessarily an emergent or urgent dental need. *Id.* Instead, "Priority 1" designations are commonly given to inmates with cavities or drainage. *Id.* A classification of "Priority 2" is given to inmates with a missing filling but who previously had a root canal to remove the nerve. *Id.* A "Priority 3" classification applies to inmates with broken dentures or who have no pain. *Id.* Dr. Ross used this system when reviewing Harlan's claims of tooth pain.

## II.    Harlan's Dental Care at FPC Yankton.

Harlan's complaints of tooth pain began in April 2014, and lasted until June 2014, when Harlan's tooth was examined by a community dentist. Throughout this period, Harlan made several formal and informal complaints about his tooth pain. Harlan also had a number of conversations with FPC Yankton officials regarding his tooth pain and potential treatment options.

On April 15, 2014, Harlan submitted an electronic inmate request to RDH Fix, complaining of pain in his top left incisor.[4] In response to his request, Harlan was informed on April 18, 2014, that he was added to the routine waiting list for dental care and that he would need to go to sick call if he experienced severe pain. Harlan's next complaints of tooth pain occurred on May 14, 2014, when Harlan filed a sick call request, and May 15, 2014, when Harlan spoke with Christina Woehl, FPC Yankton's Health Services Administrator (HSA), about his tooth pain.[5] During this conversation, HSA Woehl told Harlan to use over-the-counter pain relief to ease any pain.[6]

Harlan's tooth was examined by RDH Fix on Monday, May 19, 2014. During the examination, Harlan complained of tooth pain in his top left incisor

---

[4] An incisor is a tooth with a chisel-shaped crown and a single conical tapering root; there are four of these teeth in the anterior part of each jaw, in both the deciduous and the permanent dentitions. STEDMAN'S MEDICAL DICTIONARY 925600 (28th ed. 2006).

[5] Dr. Ross visited FPC Yankton as an on-site TDY dentist May 5-10, 2014. Docket 31 at 5, ¶ 14. But, Dr. Ross did not examine Harlan during this visit as Harlan had not reported to dental sick call. *Id.*

[6] Although HSA Woehl was trained as a nurse, she does not practice in her position as a Health Services Administrator. Docket 30-1 at 1-2.

and stated that the pain developed several days ago. Harlan subjectively rated his pain as 8 out of 10 on a pain scale. RDH Fix took an x-ray of Harlan's top left incisor, that she preliminarily read as presenting a fractured tooth. During this examination, RDH Fix informed Harlan that the next scheduled visit to FPC Yankton by a TDY dentist was July 2014. Upon review of RDH Fix's clinical notes, Dr. Ross classified the x-ray as presenting distal caries.[7] Because of this assessment, Dr. Ross classified Harlan as "Priority 1 with TDY dentist for restorative evaluation." *See* Docket 31-2 at 20. Dr. Ross also indicated that Harlan could continue to take over-the-counter pain medication for pain management.

The pain experienced by Harlan continued to increase after his initial examination by RDH Fix. Due to his increasing tooth pain, Harlan had a number of informal conversations with prison officials at FPC Yankton between May 20, 2014, and his next examination by RDH Fix on May 28, 2014.[8] Harlan's amended complaint also alleges that between these dates he was again told that FPC Yankton would not have an on-site dentist until July. Docket 19 at 3.

_____

[7] A distal caries is the loss of structure on the tooth surface that is directed away from the median plane of the dental arch. STEDMAN'S MEDICAL DICTIONARY 145610 (28th ed. 2006).

[8] Some of these informal conversations resulted in emails being sent by Physician's Assistant (PA) Downing to a "Donald Ross" on Harlan's behalf. Docket 19 at 3-4. In its amended answer, the United States admits that PA Downing sent emails to a "Donald Ross" but affirmatively avers that the emails were sent to another "Donald Ross" employed by the BOP and not to Dr. Donald Ross, the Regional Dentist. Docket 20 at 3.

On May 27, 2014, Harlan filed an administrative informal resolution form in order to ease his tooth pain. In the informal resolution form, Harlan complained about having a "broken tooth" and stated that waiting until July to see a dentist was "unreasonable." Docket 1-15. Harlan also specifically requested "to be seen by a dentist immediately or sent to another prison that has a dentist." *Id.* Due to the lack of a full-time dentist at FPC Yankton, Unit Manager Kathy Nelson informed Harlan on May 28, 2014, that his request was referred to the Chief Dental Officer in the North Central Region (i.e. Dr. Ross). Docket 1-16.

Harlan received another examination by RDH Fix on May 28, 2014. During this examination, Harlan subjectively rated his pain as 10 out of 10 on a pain scale. Due to the increase in Harlan's pain, Dr. Ross prescribed Harlan prescription pain medication and antibiotics. Harlan was informed about the prescriptions on May 29, 2014. Although Harlan received the prescription medication, he informed FPC Yankton dental that the medication prescribed did "little to relieve" his pain. Docket 32-1 at 33. To that end, Harlan again requested to have his tooth examined by a community dentist. *Id.* Despite Harlan's pain, he was directed by RDH Fix on May 30, 2014, to continue to take his medication as prescribed.

As a result of his continued pain, Harlan filed a request for a formal administrative remedy on May 29, 2014. FPC Yankton's HSA office sent Harlan a receipt on June 6, 2014, acknowledging that Harlan had filed a request seeking a formal administrative remedy. *See* Docket 1-17. In an effort to meet

7

that request, HSA Woehl met with Harlan to discuss his pain and determine if he would be willing to submit a consultation request to see a community dentist. Dr. Ross approved Harlan's request to be seen by a community dentist on June 9, 2016. *See* Docket 31-2 at 14.

Harlan's tooth was examined by a community dentist on June 16, 2014. The community dentist performing the examination, Dr. Reardon, informed Harlan that he had irreversible pulpitis[9] and a form of periodontitis.[10] Docket 31-2 at 30. Dr. Reardon also informed Harlan that "there was a lot of decay and the tooth may require extraction depending on what his dentist says." *Id.* Dr. Ross visited FPC Yankton in August 2014 and examined Harlan on August 21, 2014. Docket 31-2 at 25. During that visit, Dr. Ross performed a root canal and composite restoration on Harlan's tooth. *Id.* at 26.

## DISCUSSION

### I.    Harlan's Motion to Amend the Amended Complaint and Motion for Summary Judgment.

Harlan requests leave from the court to amend his amended complaint and his pending motion for summary judgment. Docket 35. Through his

---

[9] Irreversible pulpitis is an inflammation of the dental pulp from which the pulp is unable to recover; clinically, may be asymptomatic or characterized by pain that persists after thermal stimulation; microscopically, characterized by marked acute or chronic inflammation, sometimes with partial pulpal necrosis. STEDMAN'S MEDICAL DICTIONARY 739600 (28th ed. 2006).

[10] Periodontitis is a chronic inflammatory disease of the periodontium occurring in response to bacterial plaque on the adjacent teeth; characterized by gingivitis, destruction of the alveolar bone and periodontal ligament, apical migration of the epithelial attachment resulting in the formation of periodontal pockets, and ultimately loosening and exfoliation of the teeth. STEDMAN'S MEDICAL DICTIONARY 739600 (28th ed. 2006).

motion to amend, Harlan asks the court to consider exercising jurisdiction under both the FTCA and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Id.* Because Harlan's motion to amend was filed after the date for amending the pleadings as provided in the court's scheduling order, Docket 16, the amendment implicates both Rules 15 and 16 of the Federal Rules of Civil Procedure.[11] *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).

### A. Legal Standard.

A motion to amend a party's pleadings is ordinarily governed by Rule 15 of the Federal Rules of Civil Procedure. Under Rule 15, a party may amend a pleading with "the court's leave," and the Rule directs the court to "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). But "[i]f a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule" in accordance with Rule 16(b). *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (citing FED. R. CIV. P. 16(b)).

Rule 16(b) is designed to guide the "issuance and modification of pretrial scheduling orders and provides that '[e]xcept in categories of actions exempted by local rule, the district judge . . . must issue a scheduling order,' which 'must

---

[11] The United States argues that Harlan's motion to amend his amended complaint and motion for summary judgment should be denied as a procedural matter for a failure to comply with Local Rule 15.1. Docket 37. Local Rule 15.1 provides that "any party moving to amend a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified." Despite Harlan's failure to comply with this rule, the court will consider whether amendment of his pleadings would otherwise be appropriate.

limit the time to join other parties, amend the pleadings, complete discovery, and file motions.' " *Sherman*, 523 F.3d at 715 (quoting FED. R. CIV. P. 16(b)(1), 16(b)(3)(A)) (alterations in original). Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The "good cause" requirement of Rule 16(b) necessitates a stronger showing that the movant is entitled to relief than "the more liberal standard" of Rule 15(a). *Sherman*, 532 F.3d at 716 (citing *Popoalii*, 512 F.3d at 497). "Thus, a moving party must first make the requisite [good cause] showing. Even then the district court retains discretion as whether to grant the motion." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (citation omitted) (explaining that "[a]s a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take [scheduling] orders lightly, and will enforce them").

"What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1522.2 (3d. ed.). In *Sherman*, the Eighth Circuit explained the contours of the "good cause" standard as follows:

> The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements. *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006); *see also* Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been

10

> diligent in meeting the scheduling order's deadlines. . . . Our cases
> reviewing Rule 16(b) rulings focus in the first instance (and usually
> solely) on the diligence of the party who sought modification of the
> order.

*Sherman,* 532 F.3d at 716-17 (alterations in original) (internal citations

omitted).[12]

### B. Diligence.

Harlan's diligence is the first factor the court must consider in deciding

whether good cause exists to amend the court's scheduling order. *See id.* The

deadline for amending pleadings under the court's scheduling order was

September 28, 2015.[13] Docket 16. Harlan's motion to amend was filed nine

months later on June 28, 2016. *See* Docket 35. Harlan's motion to amend was

also filed approximately two months after the April 29, 2016 discovery deadline

and four days after the June 28, 2016 deadline for filing all motions, except

motions in limine. Docket 22. Further, Harlan filed his motion to amend two

weeks after the United States filed its motion to dismiss and its cross-motion

for summary judgment. *See* Docket 27 (motion filed by United States on June

13, 2016).

In *Sherman*, the Eighth Circuit found the defendant failed to establish

good cause to amend its answer to include an affirmative defense when: (1) the

---

[12] The *Rahn* decision was abrogated on other grounds. *See Avichail ex rel. T.A. v. St. John's Mercy Health Sys.*, 686 F.3d 548, 552-53 (8th Cir. 2012).

[13] The court previously granted a request by the United States to amend certain dates in the court's original scheduling order. *See* Docket 22. This order specified that "all other provisions of the Court's original scheduling order remain in effect[.]" *Id.* Thus, the date for amending pleadings in the court's original scheduling order—September 28, 2015—was not altered by this order.

11

motion to amend was filed over seventeen months after the scheduling deadline for amending pleadings; (2) defendant admitted awareness of the defense eight months prior to moving for the amendment; (3) defendant did not apply the defense until the summary judgment stage; and (4) "no change in the law, no newly discovered facts, or any other circumstance made the [affirmative] defense more viable after the scheduling deadline for amending pleadings." *Sherman*, 532 F.3d at 717-18. Similarly, in *Barstad v. Murray County*, 420 F.3d 880, 883 (8th Cir. 2005), the court ruled the plaintiffs did not have good cause to amend the complaint when they were almost two months past the deadline but had known about the claim they sought to add for twenty-one months.

In *Popoalii*, the plaintiff moved to amend her complaint almost six months after the court's deadline to do so passed. *Popoalii*, 512 F.3d at 495. Her original complaint alleged that the defendants were deliberately indifferent to her medical needs, and she sought leave to add a claim for negligence. *Id.* at 495-96. In defense of the amendment, the plaintiff argued that "she decided to add a negligence count only after extensive discovery[.]" *Id.* at 497. The Eighth Circuit, however, found her argument unpersuasive because the facts supporting her negligence claim should have been available to her even without discovery. *Id.* (explaining the overlap between pleading a claim for deliberate indifference and a claim for negligence).

In this case, Harlan's main argument in support of his motion to amend is that "[t]he COURT granting this amendment would save this court valuable time and recources (sic) and save the PLAINTIFF from having to file a seperate

12

(sic) BIVENS complaint on the [] same issues and facts and alleged violations in this case." Docket 35 (caps in original). Harlan's intent, by filing the motion to amend his amended complaint and motion for summary judgment, appears to be aimed at preserving the possibility of a deliberate indifference claim.

It cannot be said, however, that Harlan was unaware of the possibility that his deliberate indifference claim, brought only against the United States, might fail.[14] The United States, in both its answer and amended answer, stated as an affirmative defense that "Defendant has not waived sovereign immunity for violations of the Eighth Amendment, and a *Bivens* action may not be brought against the United States." Docket 12 at 8; Docket 20 at 8. Harlan's past experience with *Bivens* claims is also telling. During discovery, Harlan admitted to filing a *Bivens* claim in the past. Docket 38-1 at 4 (Harlan admitting that he "[f]iled a *Bivens* Motion in approximately 2007-2008 against ASST. U.S. ATTORNEY Brad Blackington, D.E.A. Special Agent Doug Freyburger and D.E.A. Drug Task Force member Dennis Holt. . .").

Given Harlan's past experience with *Bivens* actions and his knowledge that was obtained before the original deadline for amending pleadings had passed that his "deliberate indifference" claim might fail if it was brought only

---

[14] A *Bivens* action fails when the action is filed against the United States or against a federal agency instead of being filed against an individual defendant. *See Schutterle v. United States*, 74 F.3d 846, 848 (8th Cir. 1996) (concluding that a *Bivens* action failed, in part, because the action was filed against the United States and a federal agency both of which have sovereign immunity from *Bivens* actions). Additionally, it is well-settled in the Eighth Circuit that "constitutional tort claims are not cognizable under the FTCA." *Washington v. Dug Enforcment Admin.*, 183 F.3d 868, 874 (8th Cir. 1999).

13

against the United States, Harlan appears similar to the plaintiffs in *Sherman*, *Barstad*, and *Popoalii*. Further, Harlan had reason to know of the error approximately four months prior to when he filed the first motion to amend his complaint. *Compare* Docket 12 at 8 (United States's answer, filed on April 14, 2015, indicating that a "*Bivens* action may not be brought against the United States") *and* Docket 17 (Harlan's first motion to amend his complaint, filed on August 14, 2015). And Harlan was aware of the potential problem with his deliberate indifference claim when he filed his motion to amend his amended complaint and motion for summary judgment. Docket 35 ("DEFENDANTS can point to no disadvantage or hardship that would arise from this amendment nor can they voice surprise by the BIVENS JURISDICTION as they themselves mention BIVENS in their answer to PLAINTIFFS (sic) amended complaint under their AFFIRMATIVE DEFENSES.") (caps in original). Because Harlan has failed to show diligence in attempting to comply with the court's scheduling order, the court finds that Harlan has failed to show "good cause" to amend the court's scheduling order under Rule 16(b).

### C. Prejudice.

Even if this court were to find that Harlan was diligent, the court would next consider whether the United States would be prejudiced by granting the motion to amend. A secondary measure of good cause is "prejudice to the nonmovant resulting from modification of the scheduling order." *Sherman*, 532 F.3d at 717 (holding undue prejudice should only be explored if the movant has been found diligent); *see also Bradford*, 249 F.3d at 809 (" '[T]he existence

14

or degree of prejudice to the party opposing the modification' and other factors may also affect the decision." (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). The United States has the burden to show that it would be prejudiced by the court granting Harlan's motion to amend. *Planned Parenthood Minn., N.D. v. Daugaard*, 946 F. Supp. 2d 913, 918 (D.S.D. 2013) (citing *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)) ("The burden of proving prejudice lies with the party opposing the motion.").

In *Kozlowski v. Palmquitst*, No. 12-4174-KES, 2016 WL 1255711 (D.S.D. March 28, 2016), the court found prejudice to the defendants where the plaintiffs "waited until nearly a month after the discovery deadline passed before filing their motion [to amend the plaintiffs' complaint]." *Kozlowski*, 2016 WL 1255711, at *4. Similarly, in *Pucket v. Hot Springs School Dist. No. 23-2*, 239 F.R.D. 572 (D.S.D. 2006), the court concluded that allowing defendants to raise third-party complaints three years after the pleadings deadline passed, after "[d]iscovery is closed and the motions deadline has passed," while "[t]here are three pending motions for summary judgment," and when "third-party defendants would want to engage in [further] discovery" would further delay the case and "prejudice plaintiffs." *Pucket*, 239 F.R.D. at 590. And the Eighth Circuit has identified the need to conduct additional discovery as "precisely the sort of prejudice that justifies denial of a motion to amend" a complaint. *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999).

The United States argues that it would be prejudiced if the court grants Harlan's motion to amend. Docket 37 at 6-8. According to the United States,

15

"[Harlan] has reshaped his claim a number of times." *Id.* at 6. And each change has required the United States to alter the way it has approached the case. *Id.* Further, the United States asserts "litigation decisions like when and how to file dispositive motions were made based first on the complaint and then the amended complaint." *Id.* at 6-7. At bottom, the United States argues that to allow Harlan to amend his complaint at this stage in the litigation—while other dispositive motions are pending—prejudices both the United States and the individual parties who would be added into this case after discovery has finished. *Id.* at 7.

The court agrees. The prejudice flowing to the defendants—and to potential individual defendants—is an independently sufficient reason that justifies the denial of Harlan's motion to amend his amended complaint and motion for summary judgment. After presenting his claims as proceeding only under the FTCA for over a year-and-a-half, Harlan has failed to show good cause for granting his motion to amend his amended complaint. Thus, Harlan's motion to amend is denied.

## II.    Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment.

The United States moves to dismiss Harlan's amended complaint for lack of subject-matter jurisdiction or failure to state a claim upon which relief can be granted. Docket 27. The United States also cross-moves for summary judgment "on all claims that are critical of the medical decision making pertaining to Plaintiff's dental care and/or treatment." *Id.*

16

### A. Legal Standard.

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss an action for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1); *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). A motion to dismiss based on lack of subject-matter jurisdiction can be raised at any time under Federal Rule of Civil Procedure 12(h)(3). And if the court concludes that "it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). A plaintiff has the burden of establishing that subject-matter jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted).

Under a motion to dismiss based on lack of subject-matter jurisdiction, the defendant may challenge either the plaintiff's complaint on its face or the factual deficiencies of the claims. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). A facial challenge requires the court to examine the complaint and determine if the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction, and the nonmoving party receives the same protections as it would if defending a motion to dismiss under Rule 12(b)(6). *Osborn*, 918 F.2d at 729 n.6. A factual attack challenges the factual basis for subject-matter jurisdiction, and the court may consider matters outside the pleadings without giving the nonmoving party the benefit of the Rule 12(b)(6) safeguards. *Id.* "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to

17

hear the case." *Id.* at 730. Thus, the existence of disputed material facts does not prevent the trial court from analyzing the merits of the jurisdictional claims, and no presumption of truthfulness must attach to the facts alleged in the complaint during a factual attack. *Id.* Here, the court views the United States's motion to dismiss Harlan's deliberate indifference and FTCA claims as presenting a factual attack under Rule 12(b)(1).

When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6),[15] the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the complainant. *Rochling v. Dep't of Veterans Affairs*, 725 F.3d 927, 930 (8th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not plausibly state a claim for relief. *Id.* (citing *Twombly*, 550 U.S. at 555). The court determines plausibility by considering only the materials in the pleadings and

---

[15] Because an answer was filed, the court may view the motion for failure to state a claim as a Rule 12(c) motion for judgment on the pleadings. Rule 12(c) motions, however, are reviewed under "the same standard as a 12(b)(6) motion to dismiss." *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010).

exhibits attached to the complaint, drawing on experience and common sense, and viewing the plaintiff's claim as a whole. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). Here, the court views the United States's motion to dismiss Harlan's negligence claim as a motion to dismiss for failure to state a claim under Rule 12(b)(6).

### B. Harlan's Deliberate Indifference Claim.

Harlan alleges in his amended complaint that "[FPC Yankton's] staff, including MEDICAL and DENTAL employees acted with 'Deliberate Indifference; to [Harlan's] serious Dental needs. . . in violation of [Harlan's] 8th amendment right to be free from cruel and unusual punishment." Docket 19 at 2 (caps in original). The amended complaint identifies the FTCA as the source of jurisdiction for Harlan's deliberate indifference claim. Docket 19 at 1. In support of Harlan's view that an "8th Amendment claim can be filed under the [FTCA]," the amended complaint cites the Second Circuit's decision of *Hernandez v. Lattimore*, 621 F.2d 61 (2d Cir. 1979). *Id.*

The FTCA waives the government's sovereign immunity, and provides exclusive jurisdiction to federal district courts, with respect to

> civil actions on claims against the United States, for money damages, . . .  for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). An important limitation under the FTCA is that the government's liability "depends upon the existence of a state cause of action

imposing liability were the United States a private person." 14 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 3658 (4th ed.) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (state tort law is "the source of substantive liability under the FTCA")).

Here, Harlan has not pleaded a state-law cause of action of deliberate indifference. Further, *Hernandez v. Lattimore*, 612 F.2d 61 (2d Cir. 1979), that Harlan relies on as authority for the ability to bring a deliberate indifference claim under the FTCA, does not advance his argument. Instead, *Hernandez* stands for the well-settled proposition that individuals who bring suit under the FTCA may also bring a separate *Bivens* claim for deliberate indifference in the same law suit. *Hernandez*, 612 F.2d at 67 (explaining how "even a cursory reading" of the congressional reports for the FTCA "demonstrates a congressional intent to provide a remedy against the federal government in addition to, but not wholly in the place of, the private cause of action created by *Bivens*").

The Eighth Circuit takes a similar view that a plaintiff may bring a constitutional *Bivens* claim and a FTCA claim in the same lawsuit. *Washington v. Drug Enf't Admin.*, 183 F.3d 868, 873 (8th Cir. 1999) ("Rather, victims of purposeful wrongdoing on the part of federal law enforcement officers can bring specified intentional tort claims under the FTCA and constitutional tort claims under [*Bivens*].". Thus, it is settled in the Eighth Circuit that "constitutional tort claims are not cognizable under the FTCA." *Id.* at 874. But a *Bivens* claim fails when brought only against the United States or a federal agency.

20

*Schutterle v. United States*, 74 F.3d 846, 848 (8th Cir. 1996); *accord Meyer*, 510 U.S. at 485 (citing *Bivens*, 403 U.S. at 410 (Harlan, J. concurring in judgment)) (explaining that the Supreme Court "implied a cause of action against federal officials in *Bivens* in part because a direct action against the Government was not available").

Harlan has not identified a source of federal jurisdiction over his deliberate indifference claim other than the FTCA. And the United States is the only named defendant in Harlan's amended complaint. Therefore, an 8th Amendment claim is the only type of claim which Harlan could have brought against the United States. Because "constitutional tort claims are not cognizable under the FTCA," *Washington*, 183 F.3d at 874, and Harlan did not allege any other cognizable claim against the United States, Harlan's deliberate indifference claim fails for lack of subject-matter jurisdiction.

## C. Harlan's Claims of Inadequate Prison Staffing and Inadequate Delivery of Medical Services at FPC Yankton.

### i. Discretionary Function Exception Standard.

Under the FTCA, 28 U.S.C. § 1346(b), the United States has affirmatively waived its sovereign immunity to be sued in tort "in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. The discretionary function exception to the FTCA bars the United States from suit for all claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "The purpose of the

[discretionary function] exception is to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' " *Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 604 (8th Cir. 2016) (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)). And as the Supreme Court has clarified, " '[T]he proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify those circumstances which are within the words and reason of the exception—no less and no more.' " *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 492 (2006) (quoting *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984)) (internal marks omitted).

Courts use a two-part test to determine if the discretionary function exception applies. *See Compart's*, 829 F.3d at 604. First, a court considers "whether the suit concerns 'acts that are discretionary in nature, [that is] acts that involve an element of judgment or choice.' " *Id.* (quoting *Gaubert*, 499 U.S. at 322) (alteration in original). "Government employees act with discretion unless they are following a regulation or policy that is 'mandatory and . . . clearly and specifically define[s] what the employees are supposed to do.' " *Id.* at 605 (quoting *C.R.S. ex rel. D.B.S. v. United States*, 11 F.3d 791, 799 (8th Cir. 1993)) (alterations in original). The United States has the burden to establish that an employee's action involved a judgment or choice. *Demery v. U.S. Dep't of Interior*, 357 F.3d 830, 832 (8th Cir. 2004).

Second, a court determines whether "the government acted or based its decision 'on considerations of public policy.' " *Compart's*, 829 F.3d at 604

(quoting *Gaubert*, 499 U.S. at 323). An employee need not have actually relied on public policy factors to satisfy this second step. *Demery*, 357 F.3d at 833. This is because an employee's "judgment or decision need only be susceptible to policy analysis, regardless of whether social, economic, or political policy was ever actually taken into account, for the [discretionary function] exception to be triggered." *Demery*, 357 F.3d at 833. Further, if the first step of the discretionary function exception analysis is satisfied, the court "presume[s] that the governmental action involved considerations of public policy." *Compart's*, 829 F.3d at 604. "It is the plaintiff's burden to rebut that presumption." *Id.* at 605.

### ii.  The Discretionary Function Exception Bars Harlan's Claims.

Harlan's amended complaint contains several allegations regarding the staffing of medical care professionals at FPC Yankton and the delivery of medical services at FPC Yankton. First, Harlan alleges that the dental unit at FPC Yankton is understaffed because the dental unit "does not recognize an inmate in severe dental pain as a dental emergency which would require a dentist['s] immediate attention . . . ." Docket 19 at 2. Next, Harlan alleges that there is a "[s]ystematic failure to provide adequate and/or necassary (sic) dental treatment for the inmates at [FPC Yankton]." *Id.* Harlan also alleges that FPC Yankton had "no viable plan" in place to treat dental emergencies during the months of April 2014 through June 2014. *Id.* at 10-11. Finally, Harlan alleges that by not having a full-time dentist on staff during that period, and

only providing on-site dental care once a month, "virtually assur[es] that treatment would be delayed to inmates suffering severe dental pain for more than three weeks . . . ." *Id.* at 11. Because Harlan's allegations may implicate discretionary decisions made by FPC Yankton, the court must address whether the discretionary function to the FTCA, 28 U.S.C. § 2680(a), precludes the court from having subject-matter jurisdiction over these allegations. *Hart v. United States*, 630 F.3d 1085, 1088 (8th Cir. 2011). "To the extent an alleged act falls within the discretionary function exception, a court lacks subject matter jurisdiction." *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 795 (8th Cir. 1998).

In *Dudley v. United States*, No. 09-4024-LLP, 2010 WL 5290024 (D.S.D. December 17, 2010), the court addressed claims similar to those advanced by Harlan here. Specifically, Dudley, a prisoner at FPC Yankton, argued that the United States was liable under the FTCA for the lack of adequate medical facilities and poor staffing at FPC Yankton. *Dudley*, 2010 WL 5290024, at *1. The court, however, disagreed with Dudley and concluded that the discretionary function exception to the FTCA barred Dudley's claims. *Id.* at *3. The court found that the first prong of the discretionary function test was satisfied as "[n]o federal regulation or statute mandates the manner of medical classification of federal inmates and institutions . . . [and because BOP] administrators exercise their judgment, classifying inmates according to their medical needs and institutions according to the type of healthcare resources available." *Id.* The court then found that the second prong of the discretionary

24

function exception was satisfied because "[t]he decision to classify inmates by medical needs . . . necessarily involved both economic and policy considerations." *Id.* at *4; *see also id.* (citing *Cohen v. United States*, 151 F.3d 1338, 1344 (11th Cir. 1998) ("Deciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons.").

In *Archambault v. United States*, 82 F. Supp. 3d 961 (D.S.D. 2015), the plaintiff alleged that the Department of Health and Human Services and Indian Health Services (IHS) were liable for negligence under the FTCA due to the failure "to reasonably screen, hire, investigate, train and/or supervise medical employees," who caused the death of the plaintiff's wife. *Archambault*, 82 F. Supp. 3d. at 963. In analyzing the plaintiff's claims, the court noted how actions by IHS employees were the product of a choice and were not governed by specific mandates. *Id.* at 966. (remarking that individual IHS clinics determine how the clinic operates, the order in which the clinic sees patients, and whether all patients who visit the clinic must be seen on the same day). The court also observed that policy implications could affect decisions made by the IHS when it created staffing and operating procedures for IHS clinics. *Id.* at 965. ("There are finite resources available to [IHS]. Decisions as to staffing and operating procedures need to be made in an effort to maximize the effectiveness of the agency.") Thus, because both prongs of the discretionary function

exception were present, the court concluded that the plaintiff's FTCA claims were barred. *Id.* at 965-66.

Like in *Dudley* and *Archambault*, the discretionary exception function bars Harlan's allegations challenging FPC Yankton's level of medical care professional staffing and the delivery of medical services. The BOP has a statutory duty to provide medical and dental care to inmates. 18 U.S.C. § 4042(a)(2) (requiring that the BOP "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States"). Individual BOP institutions are given yearly budgets "to cover the care and subsistence of the inmate population, the infrastructure of the institution, and the salary expense of staff." Docket 32 at 2, ¶ 5. It is the job of decision makers at each institution to determine how to allocate these funds across the institution's individual units. *Id.* When allocating these funds, an institution prioritizes its funds in order to determine what vacancies are critical and must be filled. *See id.* at 3, ¶ 6.

The BOP's dental services policy sets a goal of having at least one dentist and one dental support staff at each BOP facility with over 1,000 inmates. Docket 31-1 at 5-6. Even though this is the goal, institutions are not always able to fill all their dental positions. Docket 31 at 3, ¶ 7; Docket 32 at 3, ¶ 7 (discussing geographic and financial concerns associated with candidates interested in working as a dentist at a BOP institution). Here, FPC Yankton had a vacant dental position from January 2014 through August 2014. Docket 32 at 4, ¶¶ 11-14. FPC Yankton began attempting to fill this position in October

26

2013. *Id.* at 4, ¶ 11. During the period when FPC Yankton lacked a full-time dentist, it filled the void through a combination of visiting TDY dentists and remote oversight by the regional chief dentist, Dr. Donald Ross. Docket 31 at 3-4, ¶¶ 8, 11. When providing remote oversight to FPC Yankton, Dr. Ross was often able to "recommend a conservative treatment, such as pain medication or antibiotics" to ease a patient's pain "until the inmate may be seen by a TDY dentist." *Id.* at 3, ¶ 8. This was the model that Dr. Ross followed when providing remote oversight to Harlan. *See* Docket 31 at 5-7, ¶¶ 13-26.

Here, no statutes or regulations dictated how FPC Yankton and Dr. Ross must act in staffing dental services and in providing dental care to inmates. *See Dudley*, 2010 WL 5290024, at *3; *Archambault*, 82 F. Supp. 3d at 966. And the choices made by FPC Yankton, in staffing its dental services, and Dr. Ross, in recommending treatment plans to Harlan, necessarily " 'involve[d] an element of judgment or choice.' " *Compart's*, 829 F.3d at 604 (quoting *Gaubert*, 499 U.S. at 322). FPC Yankton had elements of choice in deciding how it was going to attempt to fill its vacant dentist's position and provide dental care to inmates during the interim period. Dr. Ross used elements of judgment in deciding how to classify Harlan's tooth pain and recommending treatment plans to attempt to manage Harlan's pain. Thus, the United States has met its burden to establish that the actions here were discretionary and involved a judgment or choice. *Demery*, 357 F.3d at 832.

Having shown that the decisions were discretionary, the court must "presume that the governmental action involved considerations of public

policy." *Compart's*, 829 F.3d at 604. The burden now shifts to Harlan to rebut
this presumption. *Id.* at 605. FPC Yankton had numerous economic and
political reasons for deciding how it was going to fill its vacant dentist position
and provide dental care to inmates. For example, political and economic policy
considerations were at play in February 2014 when the Warden at FPC
Yankton determined that, due to a potential dentist's background, the
candidate was not appropriate to work in the correctional setting. Docket 32 at
4, ¶ 12. Economic considerations were also at play during Dr. Ross's treatment
of Harlan. *See* Docket 31 at 5-7, ¶¶ 17, 19, 25. It is cheaper to use a
conservative treatment plan, such as prescribing pain medication and waiting
for a TDY dentist to visit the institution, than it is to pay for an inmate to be
immediately examined by a community dentist. *See* Docket 31 at 3, ¶ 8.

Harlan has failed to rebut the presumption that considerations of public
policy supported the governmental actions here. Harlan's response brief to the
United States's motion to dismiss indicates that he disagrees with how FPC
Yankton staffed its dental services and disagrees with the treatment plan
executed by Dr. Ross. *See* Docket 34 at 1-2. But Harlan fails to identify any
specific policy that would mandate a staffing pattern or require a certain
treatment plan. Because Harlan has failed to rebut the presumption that the
actions here by FPC Yankton and Dr. Ross involved considerations of public
policy, the court must conclude that the discretionary function exception
applies. *See Compart's*, 829 F.3d at 604. Thus, the court lacks subject-matter
jurisdiction over Harlan's claims of improper staffing of dental services and

28

inadequate delivery of dental care. *See Hart*, 630 F.3d at 1088. Therefore, the United States's motion to dismiss is granted for lack of subject-matter jurisdiction.

### D. Harlan's Negligence Claim.

Harlan alleges in his amended complaint that FPC Yankton was negligent by "delaying treatment of [Harlan's] emergency dental treatment need and failing to prescribe pain medication in an efficient manner leaving [Harlan] to suffer excruciating dental pain needlessly." Docket 19 at 2. The alleged delay in dental care, according to Harlan's amended complaint, resulted in Harlan having a five-day delay in triage, a nine-day delay in prescribing Harlan pain medication, that only was prescribed for seven days, and a 61-day delay in the treatment of Harlan's injured tooth. *Id.* The source of jurisdiction for Harlan's negligence claim is the FTCA. *Id.*

The FTCA limits the United States's liability for an employee's alleged negligence to situations "where the United States, if a private person, would be liable to the claimant in accordance *with the law of the place* where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). According to the amended complaint, the relevant events occurred at FPC Yankton, which is located in Yankton, South Dakota. Thus, the court must apply South Dakota law to Harlan's negligence claim. *See Owen v. United States*, 645 F. Supp. 2d 806, 825-26 (D.S.D. 2009) (applying South Dakota law to an FTCA claim, alleging medical malpractice, arising from an Indian Health Services hospital located on the Sisseton-Wahpeton Oyate reservation in South Dakota).

29

In South Dakota, "[t]he general rule in medical malpractice cases is that negligence must be established by the testimony of medical experts." *Magbuhat v. Kovarik*, 382 N.W.2d 43, 46 (S.D. 1986). This is because "expert testimony is required to establish the standard of care for a professional unless the issue is within the common knowledge of the jury." *Luther v. City of Winner*, 674 N.W.2d 339, 344 (S.D. 2004). But the general rule "does not exclude the opinions and conclusions of lay witnesses on subjects which are within the common knowledge and comprehension of persons possessed of ordinary education, experience and opportunity." *Magbuhat*, 382 N.W.2d at 46.

Here, Harlan alleges that he suffered severe tooth pain and that his condition could have been diagnosed by a layperson. *See* Docket 19 at 2. Harlan further alleges that the medical and dental staff at FPC Yankton failed to properly diagnose and timely treat his condition. *See* Docket 19 at 2-7. While individuals can subjectively rate their pain, only a qualified dental professional can give an opinion as to the standard of care necessary to treat the dental condition. The diagnosis and treatment plan of Harlan's tooth, therefore, is not an issue within the common knowledge of lay people. *See Kostel v. Schwartz*, 756 N.W.2d 363, 383 (S.D. 2008) ("The complexity of neurosurgery does not pose that kind of self-evident situation [where expert opinion testimony is unnecessary]"); *Luther v. City of Winner*, 674 N.W.2d at 344 (noting that "the typical lay person would have no idea how to design and construct a sidewalk under the conditions on Winner's Main Street"). Thus, Harlan needs an expert witness to present evidence regarding the treatment of his tooth.

In essence, Harlan's claims of negligence by the dental staff at FPC Yankton are medical malpractice claims. And as Harlan himself admitted, he dropped his medical malpractice claims when he filed his first motion to amend his complaint. Docket 17 at 1 ("Claim (4) MALPRACTICE has been dropped as the PLAINTIFF has not got the required proof to establish this claim nor does he need to establish it to prevail in this case." (caps in original)). Because Harlan has dropped his claim of medical malpractice, he has no evidence to state a claim that he received improper dental treatment. Thus, even viewing the facts in the light most favorable to Harlan, he has failed to properly allege facts to allow him to state a claim for negligence resulting from the misdiagnosis or improper treatment of his tooth. Harlan's claim of negligence, therefore, is dismissed for failure to state a claim.

## CONCLUSION

Harlan failed to show that he was diligent in attempting to amend his amended complaint nine months after the deadline for amending pleadings had passed. Thus, the court lacks good cause to amend its scheduling order. Harlan's deliberate indifference claim, brought only under the FTCA, fails for lack of subject-matter jurisdiction. Similarly, the discretionary function exception bars Harlan's FTCA claims challenging the staffing of dental care services at FPC Yankton and the delivery of dental care services at FPC Yankton. Thus, those claims are also dismissed for lack of subject-matter jurisdiction. Harlan's remaining claims of negligence are dismissed for failure to state a claim. Thus, it is

31

ORDERED that the Harlan's motion to amend his amended complaint and his motion for summary judgment (Docket 35) is denied.

IT IS FURTHER ORDERED that the United States's motion to dismiss (Docket 27) is granted, and the cross-motion for summary judgment is denied as moot.

IT IS FURTHER ORDERED that Harlan's motion for summary judgment (Docket 23) is denied as moot.

DATED December 1, 2016.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE